## STATE MUT. LIFE ASSUR. CO. OF WORCESTER, MASS. v. ZIMMERMAN.

Court of Appeals of Kentucky.

March 6, 1953.

William M. Bullitt, Malcolm Y. Marshall, Louisville, Bullitt, Dawson & Tarrant, Louisville, for appellant.

Simeon S. Jacobs and Wilbur Fields, Louisville, for appellee.

CULLEN, Commissioner.

This appeal is by the State Mutual Life Assurance Company of Worcester, Massachusetts, from a judgment in favor of the appellee, Mrs. Jean G. Zimmerman, in the amount of $3,000, representing the face amount of an insurance policy on the life of Mrs. Zimmerman's deceased husband. The judgment was based on the theory that, although the policy had lapsed by nonpayment of premiums, the policy had a "reserve value" sufficient to provide extended insurance carrying the policy from the date of lapse to a date beyond that of Mr. Zimmerman's death. The company maintains that the evidence does not support the judgment.

The policy was dated October 23, 1947, and Mr. Zimmerman paid the first annual premium in the amount of $76.29. Mr. Zimmerman did not pay the second premium, which became due on October 23, 1948, but which could have been paid as late as November 23, 1948, under the grace period allowed by the policy. He died on December 23, 1948.

Under the terms of the policy, it lapsed and became "null and void" upon nonpayment of the second premium. The policy provided that after the payment of *two* annual premiums, the insured was entitled to certain nonforfeiture options, one of which was extended insurance for a specified period. Under the statutes, the company was not required to provide such options until after the payment of *three* annual premiums. KRS 297.120, 1948 Edition.

The only evidence introduced by Mrs. Zimmerman, to support her claim that, even though the policy did not provide for extended insurance after payment of only one annual premium, the policy had a "reserve value" which the company was required to apply towards extended insurance, was the testimony of the actuary for the defendant company, given in the form of answers to interrogatories filed by the plaintiff.

The actuary testified that the amount required by law to be set aside out of the first premium on Mr. Zimmerman's policy, as a "reserve" for meeting the benefit liabilities of the company, was $39.65. He further testified that the *average* "daily cost of insurance" for a person of Mr. Zimmerman's age was $.022 per $1,000 of insurance protection. He stated, however, that no specific portion of the premium paid on Mr. Zimmerman's policy was set aside towards paying the actual cost of insuring Mr. Zimmerman's life for the year the policy remained in force, because the "cost of insurance" is merely a theoretical or tabular cost based on past experience, and is unrelated to the actual cost of insuring any particular life. He further testified that the actual cost of insuring a particular life during the first year usually exceeds the amount of the first premium, because of the expenses, such as the agent's commission, which are involved in connection with issuing the policy. He also testified that no part of the premium on Mr. Zimmerman's policy was applied towards creating a "reserve value" or for the future payment of dividends.

The trial court found as facts that the "cost of insurance" for the first year under Mr. Zimmerman's policy was $.066 per day ($.022 per day for each $1,000 of the $3,000 policy), or a total of $24.09 for the year; that the amount set aside for the general reserve of the company was $39.65; and that, after deducting these two items from the amount of the premium, there was a "reserve value" of $8.55 (actually, $12.55) which, if applied towards extended insurance, would carry the policy beyond the date of the insured's death. As a conclusion of law, the court found that the company was required to apply "the cash surplus of $8.55" to the furnishing of extended insurance.

■ We think it is obvious that the evidence does not support the findings of fact, or the judgment. The evidence as to the actual cost of insuring Mr. Zimmerman's life during the first year of the policy was that it was in excess of the amount available from the premium, by reason of the initial expenses in connection with issuing the policy. It is clear that the average cost of $.022 per $1,000 of insurance, referred to by the actuary, is a theoretical figure based on the normal life expectancy of persons of Mr. Zimmerman's age, and it contemplates that the ordinary policy will remain in force for a period of years.

In computing the amount of premium to be charged on Mr. Zimmerman's policy, the company of course used the average cost of insurance as a factor. This is because the premium is fixed so as to be the same amount each year, rather than charging a high premium the first few years and then reducing it during the subsequent years. The company is able to fix the first premium at an amount lower than its actual costs, because on the average of all of its policies, over the years, subsequent premiums will make up the deficit.

The finding of fact by the trial court could be justified only upon evidence that there was an actual surplus on Mr. Zimmerman's particular policy. There was no such evidence. The evidence as to average cost of insurance showed only that the company used such cost as a factor in computing the amount to be charged as a fixed annual premium.

If the policyholder can demand recovery merely because the amount of his premium exceeded the average cost, then it would seem equally as reasonable for the company to deny recovery because the policyholder did not live as long as the average person of his age. He should not be permitted to claim the averages on the one hand, and deny them on the other.

■ We perhaps should mention that the company failed to take exceptions to the conclusions of law, and therefore did not preserve the right to question the conclusions on appeal. Had the right been preserved, we would have had no difficulty in holding that the conclusions were erroneous, for the simple reason that neither the policy nor the applicable statute provided for extended insurance after payment of only one premium.

The judgment is reversed.